UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIQUE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 11-CV-1209 |
| COMCAST OF CHICAGO, INC.; | ) | |
| COMCAST OF ILLINOIS X, LLC; | ) | Judge John W. Darrah |
| COMCAST CORPORATION; and | ) | |
| NELSON SMITH, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dominique Thomas filed a Complaint on February 21, 2011, alleging

employment discrimination against her employer, Comcast of Chicago, Inc., and her

supervisor, Nelson Smith. She amended her complaint twice thereafter. Now,

Defendants Comcast of Chicago, Inc., Comcast of Illinois X, LLC, and Comcast

Corporation (collectively, "Comcast") move for summary judgment in their favor. Smith

separately filed his own motion for summary judgment. Since Thomas alleges a violation

of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, jurisdiction is proper in the

Northern District of Illinois, where all parties reside. Specifically, Thomas' Second

Amended Complaint alleges: (I) sexual harassment under Title VII against Comcast and

under the Illinois Human Rights Act ("IHRA") against Smith and Comcast;

(II) retaliation under Title VII and the IHRA against Comcast; (III) assault and battery

under Illinois state law against Smith and Comcast; and (IV) intentional infliction of

emotional distress under Illinois state law against Smith and Comcast.

## PROCEDURAL REQUIREMENTS

Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in an opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b)(3)(C) permits additional material facts to be provided by the nonmoving party. Local Rule 56.1(a)(3) then allows the moving party to submit a concise reply to these additional facts. Rule 56.1 requires statements of facts to consist of short, numbered paragraphs. To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziana v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact which relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

# BACKGROUND

The following is taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Thomas was hired by Comcast on December 1, 2008; she remains employed by Comcast as a Customer Account Executive ("CAE") in the Customer Retention Department. (Smith's 56.1(a)(3) Statement ¶ 1.) Comcast provides video, cable, high-speed internet, and phone services to customers. (Comcast's 56.1(a)(3) Statement ¶ 1.) Comcast operates a call center in Tinley Park, Illinois; there, CAEs, like Thomas, receive calls from customers who are considering discontinuing their service through Comcast and work to maintain the customers' business. (*Id.* ¶¶ 2-3.) CAEs in the call center work in a large open room and are assigned desks and cubicles. (Comcast's 56.1(a)(3) Statement ¶ 4.) Defendant Nelson Smith was employed by Comcast as a Retention Supervisor in the Customer Retention Department from August 13, 2007 until March 2011; the CAEs and supervisors worked in close proximity on the same floor at the Tinley Park call center. (Smith's 56.1(a)(3) Statement ¶¶ 4, 8.)

In 2009, Thomas was transferred to Smith's team in the call center. (*Id.* ¶ 10.) Smith greeted workers in the call center with hugs, pats on the back, and fist bumps. (*Id.* ¶ 11.) As Thomas' supervisor, Thomas alleges Smith made the following comments to her: (1) "You're sexy"; (2) "I did not know you were that cute"; (3) "You should not wear things like that to work because you look too good"; (4) "You have pretty lips"; (5) "You have nice legs"; (6) "You're [sic] butt looks too juicy"; and (7) "If I was your man, I would tear you up." (*Id.* ¶ 14.) Smith also told Thomas that "if you and I were in a

relationship, it would be perfect." (Pl.'s 56.1(b)(3)(C) Statement ¶ 4.) Smith denies making these statements. (Smith's 56.1(a)(3) Statement ¶ 15.)

Thomas further alleges Smith touched her leg while saying, "You have some really thick legs." (Smith's 56.1(a)(3) Statement ¶ 17.) Thomas claims Smith rubbed her hair on multiple occasions. (Pl.'s 56.1(b)(3)(C) Statement ¶ 5.) Smith denies making these comments. (Smith's 56.1(a)(3) Statement ¶¶ 15, 21.) Thomas also testified that in one instance, while she was on the phone, she had her feet on her desk; Smith approached her desk, picked her legs up, and put her legs on the ground. (*Id.* ¶ 24.) Smith admits moving her feet off the desk because he thought it was unprofessional of Thomas. (Pl.'s 56.1(b)(3)(C) Statement ¶ 39.) Thomas alleges Smith talked to her about Smith's sex life with his wife and discussed his desire to have an affair with a coworker. (Smith's 56.1(a)(3) Statement ¶ 27.)

Thomas also claims that on October 22, 2009, while she was on the phone with a customer, Smith approached her, hugged her from behind, and partially kissed her on the mouth. (*Id.* ¶¶ 34-35.) Smith denies that he kissed Thomas, but contends that they bumped heads when he greeted Thomas in the morning. (*Id.* ¶ 36.) After Smith purportedly kissed Thomas, Thomas met with Manager Norma Hopman and told Hopman about the kiss. (*Id.* ¶ 43.) Thomas was hesitant to complain to Comcast about Smith prior to this instance because Smith was her direct supervisor, and she was nervous. (Pl.'s 56.1(b)(3)(C) Statement ¶ 12.) Hopman informed Thomas that Comcast would investigate her allegations; Thomas left work and when she returned, she was assigned to another team with a new supervisor. (Smith's 56.1(a)(3) Statement ¶¶ 44-

46.) Comcast's investigation into Thomas' complaint revealed that Smith engaged in inappropriate conduct and that he violated Comcast's Harassment Policy. (Pl.'s 56.1(b)(3)(C) Statement ¶ 24.) Comcast instructed Smith that he was not to have any interactions with Plaintiff unless it was strictly related to work and that he was not to touch or hug any employee. (Comcast's 56.1(a)(3) Statement ¶ 48.) Despite this, Smith continued to hug other employees. (Pl.'s 56.1(b)(3)(C) Statement ¶ 26.)

After Thomas was moved to a different team, she was given a pay raise and advanced to the next level in her career as a CAE. (Comcast's 56.1(a)(3) Statement ¶ 50.) After Thomas' move to another team, she complained to another supervisor that Smith continued to greet her at work and that this made her feel uncomfortable. (*Id.* ¶ 52.) Upon learning of this, a manager instructed Smith he was not to make any contact with Thomas. (*Id.* ¶ 53.)

As a result of the alleged sexual harassment, Thomas claims she suffered from, and continues to suffer from, emotional distress. (Smith's 56.1(a)(3) Statement ¶ 50.) Another CAE, Katrina McGee, also reported she was uncomfortable with Smith's hugging her and invading her personal space in December 2010. (Comcast's 56.1(a)(3) Statement ¶ 55.) Comcast investigated this complaint and interviewed CAEs that Smith supervised. (*Id.* ¶ 56.) On December 17, 2010, following this investigation, Comcast suspended Smith and placed him on administrative leave; thereafter, Comcast terminated Smith's employment. (*Id.* ¶¶ 61-62.)

After Thomas was hired as a CAE in the call center, she attended training regarding Comcast's sexual harassment policy. (Smith's 56.1(a)(3) Statement ¶ 2.)

Comcast promulgated a Sexual Harassment Policy, a Harassment Policy, an Open Door Policy, and an Equal Employment Opportunity Policy, all of which were included in Comcast's Employee Handbook. (Comcast's 56.1(a)(3) Statement ¶ 18.) The harassment policies define prohibited conduct and identify channels for reporting violations. (*Id.* ¶ 19.) Comcast also maintains a toll-free hotline that employees can call to report violations at any time. (*Id.* ¶ 20.) At the start of their employment, both Smith and Thomas signed acknowledgments, indicating they received and understood the harassment and open door policies employed by Comcast. (*Id.* ¶¶ 23, 26.)

In Thomas' role as a CAE, she is evaluated through various metrics, including her sales and productivity, which takes into account call duration, sales rates, and call volume. (Comcast's 56.1(a)(3) Statement ¶ 6.) CAEs receive review ratings of "Green," "Yellow," or "Red" – Green indicates acceptable performance; Yellow indicates a need for improvement, and Red means the CAE's performance fell short of expectations. (*Id.* ¶ 7.) When a CAE fails to meet the performance metrics, a correction active or warning is generated: this warning is provided to the CAE's Retention Supervisor, who can review the contents of the warning with the CAE. (*Id.* ¶ 8.) The duties of a Retention Supervisor, such as Smith, include overseeing a team of CAEs and providing them with coaching and performance feedback. (*Id.* ¶ 10.) Retention Supervisors cannot directly fire CAEs but can impact the termination of a CAE. (*Id.* ¶ 12.) Retention Supervisors prepare their performance evaluations of their CAEs; these evaluations are reviewed by the Managers prior to submitting the evaluations to the CAEs. (*Id.* ¶ 13.) These

evaluations are used to determine raises in compensation and promotion potential. (Pl.'s 56.1(b)(3)(C) Statement ¶ 35.)

Thomas received a corrective action for attendance prior to working on Smith's team. (Comcast's 56.1(a)(3) Statement ¶ 64.) In December 2008, Thomas received a Green achievement level for her performance metrics. (*Id.* ¶ 65.) Thomas received a verbal warning for failing to offer a discount to a customer for a promotional package while on Smith's team. (*Id.* ¶ 66.) She also received a verbal warning on October 29, 2009, based on her performance metrics for that month. (*Id.* ¶ 68.) After her October 22, 2009 complaint regarding Smith, Thomas did not receive any discipline that was not related to attendance issues or for failing to meet performance metrics. (*Id.* ¶ 70.) Thomas has also admitted that Comcast waived a corrective action it could have applied to her in February 2010 in order to permit Thomas to have more time to improve her metrics. (*Id.* ¶ 72.) Thomas did not receive a pay raise in March 2011 due issues regarding attendance and the coding of Family Medical Leave Act ("FMLA") time. (Pl.'s 56.1(b)(3)(C) Statement ¶ 33.) However, Thomas did receive a raise in 2010 and another in March 2012. (Comcast's 56.1(a)(3) Statement ¶¶ 50-51.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine

7

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

### Count I: Sexual Harassment

Count I of Thomas' Second Amended Complaint alleges sexual harassment against Comcast under Title VII of the Civil Rights Act, pursuant 42 U.S.C. § 2000e and

under the IHRA, 775 ILCS 5/*et seq.*, against Smith and Comcast.[1] However, Count I is unclear as to whether Thomas alleges a *quid pro quo* sexual harassment claim or a hostile-work-environment harassment claim. The latter analysis requires Defendants' motions for summary judgment to be denied.

## Hostile-Work-Environment Harassment

To establish a sexual harassment claim on the basis of a hostile work environment, Thomas must demonstrate: "(1) she was subjected to unwelcome harassment, (2) the harassment was based on her sex, (3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and (4) there is a basis for employer liability." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007) (*Kampmier*) (citing *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354–55 (7th Cir. 2002)).

First, there must be a determination as to whether or not a jury might reasonably conclude Thomas was subjected to unwelcome harassment. *Kampmier*, 472 F.3d at 940. Thomas complained about her interactions with Smith to a manager and indicated she still felt uncomfortable around him even after she was removed from Smith's team. Even if Thomas occasionally discussed her personal life with Smith, none of the facts on record indicate Thomas welcomed Smith's sexual comments and conduct to support an

---

[1] As Defendant Smith acknowledges (Smith's Mem. in Support of Summary Judgment, n.1), a hostile work environment claim under the IHRA is analyzed under the same framework as a Title VII hostile work environment claim. Because "[c]laims under the Illinois Human Rights Act are analyzed under the same standards as Title VII claims," Thomas' hostile work environment claim under the IHRA survives summary judgment on the same bases considered above under Title VII. *Cooper v. Illinois Dept. of Natural Resources*, No. 09-CV-3333, 2010 WL 2178720, at *2, n.1 (C.D. Ill. May 28, 2010).

award of summary judgment in favor of Defendants. *See id.* (finding a genuine issue of material fact existed as to unwelcome harassment and stating: "[Defendant] contends that [Plaintiff] engaged in sexual banter herself; however, it did not point to any evidence in the record that [Plaintiff] encouraged the alleged behavior or welcomed it in anyway. Accordingly, [Plaintiff] has raised a genuine issue of material fact about whether [the supervisor] subjected her to unwelcome harassment."). A reasonable jury might find that Smith's interactions with Thomas constituted unwelcome harassment; therefore, a genuine issue of material fact exists as to this factor of a hostile-work-environment claim.

Next, Thomas must establish that the harassment against her was based on her sex. Defendants counter this point with the fact that Smith apparently greeted both female and male employees with hugs. Thomas disputes this; but even assuming Smith *did* hug both males and females in the office, Defendants offer no evidence demonstrating Smith allegedly made sexual and offensive remarks to both men and women. Rather, it appears Smith's offensive conduct was directed primarily at women. At the very least, a genuine issue of material fact is raised as to whether Smith's alleged harassment was because of Thomas' sex. *See Kampmier*, 472 F.3d at 940-41.

The emphasis of Defendants' summary judgment motions with regard to Count I of the Second Amended Complaint is the third hostile-work-environment factor: whether or not Smith's alleged conduct was so severe as to change the conditions of her employment at Comcast and create an abusive or hostile atmosphere. *Id.* "It is enough that the work environment is objectively hostile or abusive . . . . [A] court must consider the totality of the circumstances, including the 'frequency of the discriminatory conduct;

its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Merely offensive conduct is not automatically actionable, but a plaintiff need not show the harassment caused "tangible psychological injury." *Id.*

Defendant Smith argues that, beyond the hugging and purported foot and calf touching by Smith, Thomas' claim "is reduced to six or seven isolated statements . . . and the accidental kiss." (Smith's Mem. in Support of Summary Judgment at 4-5.) Comcast employs similar reasoning. However, Defendants' attempts to gloss over the facts are not persuasive. Smith's comments to Thomas were offensive and highly sexual in nature. Smith made several unwelcome physical touches on Thomas, including hugging her, touching her hair, touching her legs (while saying they were "sexy"), touching her feet, and kissing her. This conduct, taken in its totality, could be interpreted by a reasonable jury to have created a hostile work environment. At the very least, a genuine issue of fact remains regarding Smith's conduct toward Thomas and others and whether or not his conduct was, both subjectively and objectively, pervasive enough to interfere with Thomas' work environment.

The final factor in an analysis of a hostile-work-environment claim is a showing of employer liability. "An employer may be vicariously liable to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Kampmier*, 472 F.3d at 942 (citing

*Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). Because Smith was Thomas' immediate supervisor, vicarious liability is established.

However, an employer may raise an affirmative defense to this liability, demonstrating: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). Comcast had harassment policies in place to handle sexual harassment claims. However, it is not conclusive that Comcast exercised reasonable care to prevent and correct the sexually harassing behavior. While Thomas was summarily removed from Smith's team once her claims were made, the facts surrounding the investigation into this matter are disputed. Moreover, a reasonable jury might find the fact that it was apparently Smith's custom to hug all of the CAEs on his team indicates a lack of reasonable care on the part of Comcast to prevent harassment. *See E.E.O.C. v. Management Hospitality of Racine, Inc.*, 666 F.3d 422, 435 (7th Cir. 2012) (finding: "Despite the fact that the Defendants had a sexual harassment policy in place, a rational jury could have found that the policy and complaint mechanism were not reasonably effective in practice."). Furthermore, after learning of this incident between Smith and Thomas, Comcast apparently did not take steps to discipline Smith. Comcast has not shown that Smith was specifically disciplined for communicating with Thomas after she was removed from his team, despite admonishments not to interact with her, and Smith continued to communicate with Thomas after she was removed from his team. Rather,

there is a factual question as to whether Comcast promptly and properly addressed the issue of Smith's inappropriate conduct. A genuine issue of material fact remains with respect to Comcast's reasonable care to prevent and correct harassment like the kind alleged by Thomas.

Finally, a genuine issue of material fact remains as to whether Thomas unreasonably failed to take advantage of corrective opportunities to avoid harassment. A reasonable jury might, in light of the facts provided, find that Thomas was afraid of or uncomfortable reporting someone who was her direct supervisor. This is particularly so in light of the fact that Thomas was aware that Smith regularly hugged other employees, with no apparent negative consequences. The alleged sexual remarks from Smith, coupled with the alleged unwelcome touching, occurred over the course of a few months. When Smith, as Thomas alleges, attempted to kiss her in the office, she reported his behavior. Whether or not Thomas' reporting of Smith's conduct was timely and reasonable is a factual issue. *See Hardy v. University of Illinois at Chicago*, 328 F.3d 361, 365-66 (7th Cir. 2003) (reversing summary judgment in favor of the defendant and noting: "While [Plaintiff's] report to [the human resources office] was almost three months after Green's first alleged act of harassment, it was only eight days after his last . . . . [I]t is a question for the trier of fact to determine the reasonableness of [Plaintiff]'s delayed completion" of a complaint form.)). Therefore, genuine issues of material fact remain with respect to Comcast's liability under *respondeat superior*.

Therefore, summary judgment as to Count I pursuant to Title VII is denied.

*Count II: Retaliation*

Count II of Thomas' Second Amended Complaint alleges that after she complained about the alleged sexual harassment, she received discipline for work performance issues and that Comcast "began to scrutinize and unfairly criticize [her] work." (Second Am. Compl. ¶¶ 51-55.) Thomas claims that after she complained about Smith to Comcast, Comcast retaliated against her by placing her in a position inferior to that of other employees and by unfairly disciplining her. (*Id.* ¶¶ 57-58.) Thomas alleges retaliation under Title VII and the IHRA.

Title VII proscribes employment discrimination against an employee who "'opposed any practice' prohibited by Title VII or who 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Milligan v. Board of Trustees of Southern Illinois University*, No. 10–3862, 2012 WL 2764971, at *9 (7th Cir. July 10, 2012) (*Milligan*) (citing 42 U.S.C. § 200e-3(a)). "Title IX's prohibition on discrimination 'on the basis of sex' likewise covers 'retaliat[ion] against a person *because* he complains of sex discrimination.'" *Id.* (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005)).

Retaliation may be shown by either a direct or indirect method of proof. Retaliation shown by the indirect method requires a plaintiff to show she: (1) engaged in a statutorily protected activity, (2) met the employer's expectations of her satisfactorily, (3) suffered a materially adverse employment action, and (4) was treated less favorably than similarly situated employees who did not engage in the protected activity. *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 663 (7th Cir. 2006) (*Tomanovich*).

Once a plaintiff has established a *prima facie* case for retaliation under the indirect method, the burden shifts to the defendant to show it had a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant meets that burden, the burden shifts back to the plaintiff, who must then show that there was a genuine issue of material fact as to whether or not the non-discriminatory basis was pretextual. *Id.*

Considering the *indirect* method of proof: Thomas met the first required element, engaging in a statutorily protected activity, by reporting what she alleged was sexual harassment by Smith to her employer, Comcast. This first element is not in dispute. (Comcast's Mem. in Support of Mot. for Summary Judgment at 10.)

Next, a factual question remains as to whether or not Thomas, despite her satisfactory job performance, suffered an adverse employment action. A materially adverse employment action is an action which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). After Thomas complained about Smith's behavior on October 22, 2009, Thomas received a "verbal warning" on October 29, 2009. Thomas also represents that after she filed her complaint against Defendants in court in February 2011, she did not receive a raise the following month. Thomas supports the arguably suspicious timing between her purported adverse employment actions and her statutorily protected activities (complaining about Smith's alleged harassment and filing a lawsuit in federal court). Drawing all reasonable inferences in favor of Thomas, there is adequate circumstantial evidence to support Thomas' claim against Comcast to survive a motion for summary judgment.

Thomas has presented a *prima facie* case for retaliation under the indirect method of proof; the burden then shifts to Comcast to demonstrate legitimate, non-discriminatory reasons for the verbal warning issued to Thomas and Comcast's failure to give Thomas a raise in March 2011. *Tomanovich*, 457 F.3d at 663. Comcast presents two potentially legitimate bases for these actions. First, the verbal warning was issued to Thomas because she had failed to meet some performance metrics prior to her complaining about Smith's conduct. Second, Comcast submits Thomas did not receive a raise from Comcast in March 2011 because of issues regarding her attendance. Comcast has identified legitimate reasons for the purported adverse employment actions; the burden then shifts back to Thomas, who must establish Comcast's reasons were merely pretextual. Here, the question is "whether the employer's proffered reason was pretextual, meaning that it was a lie." *Harper v. C.R. England, Inc.*, Case No. 11–2975, 2012 WL 2053574, at *9 (7th Cir. June 8, 2012) (quoting *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005)). Thus, Thomas must "identify . . . weaknesses, implausibilities, inconsistencies, or contradictions" in Comcast's stated reasons. *Id.* (internal citations omitted). Thomas argues that the timing for both retaliatory measures is suspicious, and in light of the fact that Thomas otherwise performed satisfactorily and remains employed with Comcast, a reasonable jury could find that these purported "corrective actions" by Comcast against Thomas were merely pretextual.

Therefore, Comcast's motion for summary judgment on this claim is denied.

*Counts III and IV:  Assault, Battery, and Intentional Infliction of Emotional Distress*

Count III of Thomas' Second Amended Complaint alleges assault and battery against Comcast and Smith, while Count IV alleges their intentional infliction of emotional distress ("IIED").  Defendants argue they are entitled to summary judgment on these counts, maintaining that Thomas' tort claims are preempted by the IHRA.  Alternatively, Defendants argue that as a matter of law, they are entitled to summary judgment, as no reasonable jury could find in favor of Thomas' tortious claims.  Defendants are not entitled to summary judgment on these counts.

## Preemption

The IHRA does preempt some common-law tort claims in some situations.  "The IHRA gives the Illinois Human Rights Commission ("IHRC") exclusive jurisdiction over civil rights violations. . . . A violation of the IHRA includes employment discrimination based on sex or handicap." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (*Naeem*).  The Illinois Supreme Court has held that preemption is applicable where a plaintiff's tort claims were "inextricably linked" to her sexual harassment claims, such that she would have "no independent basis for imposing liability." *Geise v. Phoenix Company of Chicago, Inc.*, 159 Ill.2d 507 (1994).  The question of preemption under the IHRA turns not on the facts alleged but on the legal elements required by each tort. *Naeem*, 444 F.3d at 604.  "[A]ssault and battery 'are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the [IHRA].'" *Benitez v. American Standard Circuits, Inc.*, 678 F. Supp. 2d 745, 767 (N.D. Ill. 2010) (*Benitez*) (quoting *Maksimovic v. Tsogalis*, 177 Ill.2d 511 (1997)).  This logic

has also been extended to IIED claims. *See Temores v. S.G. Cowen*, 289 F. Supp. 2d 996, 1007 (N.D. Ill. 2003).

Here, Thomas' claims of assault, battery, and IIED would be actionable whether or not her civil rights had been violated. "For example, independent of the duty the IHRA imposes on employers to refrain from sexually harassing employees, a person has a duty to refrain from touching others without their consent, and breaching that duty constitutes an actionable battery." *Benitez*, 678 F. Supp. 2d at 768. Because Smith's alleged conduct would still be actionable regardless of the IHRA, Thomas' tort claims are not preempted.

Evidence to Support Tort Claims

Under Illinois law, an IIED claim requires a showing that: "(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress." *Van Stan v. Fancy Colours & Co.,* 125 F.3d 563, 567 (7th Cir. 1997). A reasonable jury could find that Smith's comments and physical interactions with Thomas were intentional, despite Smith's contention that, for example, he did not kiss her but rather simply bumped heads with Thomas. The evidence could reasonably support a claim that Smith intended to cause, or knew there was a high probability that his behavior would cause, Thomas severe emotional distress. Thomas did suffer distress after having to deal with Smith's advances. Therefore, Smith's motion for summary judgment as to Count IV of the Second Amended Complaint is denied.

Illinois law defines assault as "a reasonable apprehension of an imminent battery." *Zboralski v. Monahan*, 446 F. Supp. 2d 879, 885 (N.D. Ill. 2006) (internal citations omitted). Battery does not require injury, but is defined as the unauthorized touching of another. *Id.* There are factual disputes regarding the battery of Thomas by Smith. Thomas has certainly alleged multiple instances of Smith's unwanted touching of her; whether or not this touching was intentional is a factual question. Because factual questions regarding the alleged assault and battery remain unresolved, summary judgment is also inappropriate on Thomas' claims of assault and battery. Therefore, Smith's motion for summary judgment on Count III is denied.

Moreover, factual questions remain regarding the possibility of Comcast's vicarious liability under *respondeat superior*. *Id.* (noting: "Under *respondeat superior*, 'for an employer to be liable for the torts of its employees, a plaintiff must show that a principal/agent relationship exists and that the agent committed a tort while acting in the scope of his employment.'"). Because Smith allegedly committed these torts while in a supervisory role for Comcast, a reasonable jury might find Comcast vicariously liable for his tortious behavior. Therefore, Comcast's motion for summary judgment on Counts III and IV of the Second Amended Complaint is also denied.

## CONCLUSION

In light of the foregoing analysis, Defendants' Motions for Summary Judgment

are denied on all counts of Thomas' Second Amended Complaint.

Date: 8-2-12

JOHN W. DARRAH
United States District Court Judge